HAVENS, Tax Collector, *v.* HEWES *et al.*

[91 South. 397. In Banc. No. 22543.]

HIGHWAYS. *Statute providing for creation of road districts and giving road commissioners jurisdiction over roads, ferries, and bridges held unconstitutional.*

Chapter 173, Laws of 1914, entitled "An act to provide for the creation of road districts," etc., being an attempt to provide a method by which practically all jurisdiction of the board of supervisors over roads, ferries, and bridges may be withdrawn from such board and vested in road commisioners, is violative of the provisions of section 170 of the Constitution of 1890, providing that the board of supervisors of counties shall have full jurisdiction over roads, ferries, and bridges.

APPEAL from chancery court of Harrison county.
HON. W. M. DENNY, Special Chancellor.

Action by H. L. Hewes and others against Joseph W. Havens, Tax Collector. From decree overruling a motion to dissolve the temporary injunction, the defendant appeals. Affirmed.

*R. C. Cowen* and *J. L. Heiss,* for appellant.

It will of course, be contended that chapter 173, Laws of 1914, is in direct conflict with and is violative of the provisions of section 170 of Constitution of the state of Missis-

sippi, for the reason that it provides a method by which practically all jurisdiction of the board of supervisors over roads, ferries and bridges may be withdrawn from such boards and vested in road commissioners. We are, however, of the opinion that this act did nothing more than to regulate the manner in which the jurisdiction of the board of supervisors should be exercised over the same. This act does not attempt to create a body politic and corporate, as was contemplated by chapter 169, Laws of 1916, but merely provides a method by which the property-owners of a certain district may cooperate with the board of supervisors in the creation of the district, and procure the appointment of competent road commissioners to carry into effect such plans and specifications as shall have been presented by them to the board of supervisors, and by the board of supervisors approved and adopted. Chapter 149, Laws of 1910, and amendments thereto provide for the construction of public roads by commissioners, giving the commissioners full power and authority over the management of construction and maintenance of all roads built thereunder; to let contracts for the construction and maintenance of such roads, with full power to determine the mode and manner of construction and the cost of same, and to be given all the powers delegated to the commissioners under chapter 173, Laws of 1914, except that they are not authorized to assess the benefits against the property-owners. Surely the assessment of benefits to accrue to such property-owners by virtue of the establishment of a road district, and determining the amount that each property-owner should pay towards such improvement, is not in any way an interference with the jurisdiction given to the board of supervisors over roads, ferries and bridges under the provisions of section 170 of the Constitution.

A reading of chapter 173 of the Laws of 1914, and of chapter 169 of the Laws of 1916, show the powers delegated in the two chapters are utterly unlike. Chapter 169 has the following provisions: (1) It makes the filing of the requisite petition before the board of supervisors a

mandate upon them to do the things requested; (2) it creates the board of commissioners a body politic and corporate; (3) it gives the commissioners absolute jurisdiction of the territory and for the establishment and working, by contract or otherwise, of the roads and bridges of the district; (4) the commissioners are not required to follow any set plans of improvements and may require work to be done by the citizens subject to road duty; (5) the commissioners have the absolute authority themselves to make the levy for the district; (6) it authorizes the commissioners to borrow money, to a certain per cent. in anticipation of taxes, without any control or supervision by the board of supervisors, and authorizes them to issue bonds and levy the necessary taxes therefor: (7) it gives no authority to the board of supervisors to control or regulate any of the foregoing matters.

It is readily seen, therefore, that the provisions of chapter 169 of the Laws of 1916, takes from the board of supervisors all control over the roads in such district. Such, however, is not the case under the provisions of chapter 173 of the Laws of 1915, here involved. Under no circumstances does a petition presented under the act in question require the board of supervisors to grant the prayer of said petition, nor is the real control taken from the board of supervisors.

(1) The board of supervisors are the judges of whether the district is for the best interest of owners of real property, and that the establishment thereof be necessary for public welfare, or for agricultural purposes. (2) The board appoints an engineer, in the first instance, who under the board makes a survey to ascertain the region which will be benefitted, and files his report showing the territory which will be benefitted, giving a general idea of the character and costs of the roads which should be improved, and of the size and character of such improvements. (3) The board of supervisors, upon creating the district, appoints the commissioners over whom they have supervision and right to remove for incompetency or neglect of duty. (4)

This board of commissioners is not a body politic and corporate, but one of limited and prescribed powers and duties. (5) The commissioners have not the power and discretion of making such improvements as they desire, with authority to require road work from the citizens within the district subject to road duty, but only have the authority to employ an engineer and for the work outlined and set forth in the original petition and necessarily as outlined in the report of the engineer employed by the board of supervisors before action on the original petition. (6) While the assessment roll is made up by the commissioners it must be approved by the board of supervisors, who make the assessment on the lands. (8) The commissioners have no authority to borrow money or issue bonds without the consent and authority of the board of supervisors. (See 7223, Hemingway's Code.)

It is therefore, seen from the foregoing, that the commissioners under chapter 173, Laws 1914, act only upon general plans already approved and adopted by the board of supervisors, with powers largely ministerial under specific and limited authority, and do not divest the board of supervisors of their original controlling supervision over roads, ferries and bridges delegated to them by the constitution.

*White & Ford,* for appellee.

In 1914, the legislature passed chapters 173, 174, 175 and 176, all relating to creation of road districts. The first, chapter 173, and the act here in question, was the most drastic in its attempt to take from the boards of supervisors their constitutional full control over roads, ferries and bridges. Section 174 (which was amended by chapter 196, Acts 1916) was somewhat milder, and allowed the boards of supervisors general supervision over the board of commissioners created. This act, even with this provision, has been by this court held unconstitutional. *Salter* v. *County,* 72 So. 700. Chapter 175 was milder but

has not been passed on and chapter 176 has been held constitutional because by its terms nothing could be done by the commissioners without the approval and consent of the boards of supervisors. See *Prather* v. *Googe,* 108 Miss. 670.

This same chapter of the Acts of 1914, as amended by chapter 277, Laws 1920, has again been construed in a case hereinafter cited. So we see a beginning of these acts with chapter 173 the most drastic, and gradually being modified until chapter 176 is enacted which leaves the authority where the constitution puts it. Chapter 173, Laws 1914.

Section one provides that when fifty per cent of the owners of real property, or sixty per cent of the owners, owning fifty per cent of the real estate in the road district shall petition the board of supervisors to establish a road district, naming generally the property to be embraced, the board shall enter on the minutes an order appointing an engineer to be selected by the petitioners. This engineer shall make a survey and himself ascertain the region to be benefitted by the system of roads, designating the size, character and location of the roads to be constructed, the expense to be paid by the county, to be repaid later. Notice by publication shall then be given the property-owners to favor or object to the road district. If the board does not act promptly, it may be compelled to do so by mandamus.

From the above section, it will be seen that the property-owners may compel the board to act. That the engineer selected by the property-owners must be named by the board and this engineer is at liberty to make a guess what territory would be benefitted by the road, then to specify the kind of road and where it shall be located. The board is powerless and unless they do as directed they are subject to mandamus. So the location and kind of road is given over entirely to an engineer, competent or incompetent, civil or mechanical, selected by some prop-

erty-owner who may select him for his own personal ends or for improvement of his own property.

Section two provides that the board must make the order establishing the district without further inquiry, unless certain property-owners object. Therefore where the required number of property-owners sign the petition, the board cannot inquire into the matter but must establish the roads as suggested by the engineer selected by petitioners.

Section three provides the order shall have the force and effect of a judgment. An appeal is provided for by an owner of property but to what court or tribunal is not stated. The board' cannot appeal from its order forcibly entered.

Section four provides when the district is established, the board shall appoint three owners of real property within the county and these commissioners are required to take the constitutional oath as officers and swear they will not be interested in any contract (the commissioners) make respecting the roads, ferries and bridges, and that the commissioners will assess all benefits against the property as well as damages. If a commissioner does not qualify and the board of supervisors is not in session the place may be filled and the majority in numbers of the property-owners may name the commissioner, and the board of supervisors must appoint him. The board of commissioners may employ engineers and other persons as the commissioners desire, and may employ attorneys and may pay for the same out of the funds to be assessed against the property and if the improvements for which the assessment was levied are not made, the pay of the engineer and attorneys shall still be charged against the property, are paid by the property-owners.

In the event they fall through then an acreage tax shall be levied and the money of the property-owners is taken and nothing is gotten for it. These plans gotten up by the commissioners shall show the location and specifications of roads, the removing of fences and other obstacles

and the building of such bridges as may be necessary. From the above it will be noted that section 170 of the Constitution of 1890, is walked all over.

These commissioners while they are not required to have any qualifications for the job, or to be such men in comparison with the boards of supervisors as relates to qualifications necessary to do such work, still they are required to take an oath making them personally answerable as officers to the state and every one else and not answerable to the board of supervisors, in the road district, and it matters not whether it be one square foot or one hundred miles square, these commissioners are supreme and the boards of supervisors are without a semblance of authority, or discretion and cannot lift a hand or express their judgment. To the extent of the territory embraced, they are completely shut out and as to this territory they are not given full jurisdiction and in fact they are deprived of all jurisdiction. While section 170 says: "The legislature may make regulations concerning the same," still such regulations cannot amount to a nullification of the prior wording of the section relating to full jurisdiction. This section also provides these commissioners with power to perform the duties of assessors and as to the persons in the district opposed to the scheme, certainly they are not required to have some persons selected at random, assess their property on a basis of what these commissioners' idea is of a benefit to accrue by reason of a road or bridge built by them. Taxpayers pay money to be spent for roads, ferries and bridges by the board of supervisors after assessment by the duly constituted and qualified assessor. To show how far the act goes, it even provides, in cases of vacancies, for appointments by the commissioners themselves and in such instances the board of supervisors cannot even select the man. The board of commissioners is not answerable to anyone except for negligence or incompetency and are under no supervision as to what they do and may use their own judgment and discretion free from suggestion of the

board of supervisors. The board cannot even discharge a commissioner unless a majority of the owners in number and amount of land demand it, so it will be seen that before long the majority would control the roads, ferries and bridges and minority would perhaps pay the bills.

But note further that these commissioners shall prepare the plans for the improvements and the costs thereof. No bids are asked and the supervisors have no voice in the selection of the plans or the expenditure of the money. The commissioners may employ engineers and attorneys at will and tax it against the property and collect it by acreage tax, even though the improvements are never made. Further that locations and specifications of the roads and the removal of obstacles, and building of bridges shall all be done by the commissioners. The commissioners decide the location, specifications and do the actual building and the supervisors cannot raise a hand.

Section five makes railroads "real property" for the purpose of assessment. Section six provides that as soon as the commissioners shall have formed its plans and ascertained the cost, it shall file the same with the chancery clerk and shall also file a map showing the location of the main and lateral roads, specifications, costs, etc.

If the court please, can it be doubted that this act authorizing this board of commissioners to form its own plans of a system of roads, infringes upon the provisions of the constitution? Section seven provides that the commissioners shall proceed to view the lands in the district and shall assess the benefits to accrue to each tract by reason of the improvement and shall estimate what the landowners shall pay the first year. Railroads do not escape though it is hard to see where it can be benefitted. The commissioners have power to take over and pay for roads already built by individuals in the district.

The commissioners make the assessments against the land; and make up an assessment roll and file it with the chancery clerk, and the owners may file objections before the board of supervisors and from the ruling the property-

owners or the commissioners may appeal, but to what tribunal is not stated.

It will be noted, that by section seven the commissioners perform the duty of assessor and that the assessments are not made on a basis of value but depend on the caprice or visionary ideas of the commissioners as to what benefit will flow from a road or bridge constructed or erected also at the caprice of the commissioners. So we have an instance of the commissioner being enabled to use his own judgment as to where and how he will build a road and is then vested with the extraordinary power to put his own valuation on his handiwork and to say what he will assess the property-owner on account of value to be received by the owner from the building of the road. In short a commissioner who puts a high enough value on his judgment as to what benefit will accrue to the property-owner can confiscate the property of the owner.

Section nine provides that the commissioners shall have the right to require the board of supervisors to enter an order assessing the tax fixed by the commissioners and ten per cent additional and the tax is to be paid by the property-owner in proportion to the amount of his so-called assessment of benefit and the tax shall constitute a lien on all property of the owner in the district, whether benefitted or not and shall take priority, over all liens, executions, encumbrances and all things whatsoever and shall so remain such lien with priority until all damages and costs are paid. If the board of supervisors do not carry out the provisions of this section, mandamus lies against them to force them to do so. An appeal is provided for by the property-owners, but to what tribunal is not stated. As stated, the supervisors have no discretion but must approve the action of the commissioners or they will be mandamused and the supervisors have no remedy. This section also makes the assessment and all things done by the commissioners presumptively legal.

Section ten provides that after the above proceedings, the commissioners shall prepare or cause to be prepared

an assessment roll in which the commissioners shall inscribe the names of the landowners, a description of the land assessed, the total betterments and damages to each tract and the amount of the levy. The roll is to be certified by the commissioners and filed, and the tax collector shall collect the money on this assessment made by the commissioners.

Section eleven provides that the treasurer shall pay out nothing for roads in the district except upon order of the commissioners. Therefore the board of supervisors cannot make any improvements in the district.

Section twelve provides that if the tax first levied is not sufficient to complete the improvement, the commissioners shall report the amount of the deficiency to the board of supervisors who are required to make another levy and the board of supervisors may be made by mandamus to levy the tax so long as the commissioners require it, and in the commissioners' opinion the tax does not exceed the benefit.

Section thirteen provides that the board of commissioners shall have control of the construction of the improvements in their district. The commissioners may advertise for proposals for the work and the commissioners accept or reject the proposals, attending to the advertisement, etc.

We submit this section clearly takes from the supervisors the constitutional grant of authority. It takes complete control from them and they have no voice whatever. Section fourteen provides that contractors are required to give bonds, the amounts to be fixed by the commissioners. As showing what authority the commissioners are vested with, this section provides that they shall not remit or excuse any breach of bond.

The board of commissioners appoints the necessary agents to do the work and fixes their pay. They buy all materials and implements to build and work the roads having exclusive discretion as to what shall be paid for same and how much shall be bought and make all con-

tracts for the prosecution of the work. The Commissioners shall have their own engineer, the amount of work done from time to time by the contractors employed by said commissioners and the commissioners shall draw warrants in favor of the contractor.

Section fifteen provides the board of commissioners may with the consent of the. supervisors borrow money (this is the only power of the supervisors so far) and bonds therefor may be issued by the commissioners and the assessments pledged therefor. The commissioners may go into debt with contractors employed by them and issue to such contractors evidences of indebtedness.

Section sixteen provides the commissioners are made not liable for their acts in the absence of malice. Section seventeen provides that the commissioners may at any time alter plans of roads in the district and construct them according to changed plans subject to objections on the part of the property-owners. Section eighteen fixes the *per diem* of the commissioners and their mileage. Section nineteen provides the commissioners shall by eminent domain proceedings compel the right to build roads where they choose. Section twenty provides the commissioners are by this section made to assume a sort of perpetual succession and the roads remain indefinitely under their supervision. Section twenty-one fixes time and payment of taxes. Section twenty-two provides that bonds issued by the commissioners under the terms of the act shall be alien on all lands, railroads, etc., and the commissioners shall see to it that the tax is levied and collected annually. Section twenty-three provides that the entire revenue from the district from any and all sources are pledged to the payment of the tax and the commissioners are directed to set aside annually funds for retiring the bonds. Section twenty-four provides that errors of the commissioners will not invalidate the assessment. Section twenty-five provides no appeal shall delay the organization of a district. Section twenty-six provides for filing of annual statements by the commissioners of the financial condi-

tion of the district, expenditures, debts, etc.   Section twenty-seven provides a penalty for obstructing a road in the district.   Section twenty-eight, provides the owners of the land must give free access over their land to the commissioners, their engineers teams and outfits engaged in road work, or suffer a fine of one hundred dollars.

Section twenty-nine provides no other road tax shall be assessed on the lands in the district.   The act under consideration in *Salter* v. *Board,* 72 So. (Miss.) 700, was chapter 174, Laws 1914, as amended by chapter 169, Laws 1916.   The act, as stated here, under consideration is chapter 173, Laws 1914.   It is much more drastic than chapter 169, Laws 1916.   Now to compare the act already passed on by this court with the act here under fire.   The 1916 act gives the board of supervisors the right and power to appoint the commissioners and at least it may have been argued they would do the bidding of the supervisors.   In the 1916 act the longest term of a commissioner was three years while in chapter 173, Laws 1914, they hold office forever unless removed by the people.   Therefore, if the commissioners suited the people in the district, better than the supervisors, they would retain the commissioners.   In the 1916 act, the commissioners had to report their acts, expenditures, etc., to the board of supervisors and in chapter 173, Laws 1914, the commissioners answer to no one.   In the 1916 law the commissioners had to apply to the supervisors and they passed on changes in or alterations in roads.   Compare the absolute authority as to location, construction, alteration, or abandonment under the Laws of 1914 given the commissioners.   In the 1916 law the board of supervisors heard and revised the assessment.   Not so with the law here involved.   The 1916 law does say that the commissioners shall have charge over the roads, ferries and bridges in their district, and further, subject however, to the general jurisdiction of the board of supervisors.   The act of 1916, states that the jurisdiction of the supervisors shall be in no way divested. In the law here to be construed, full jurisdiction is express-

ly given the commissioners and also it provides for all things to be done by them, and under their charge, and does not state either expressly or inferentially that the supervisors shall have general or limited jurisdiction.

Chapter 173, Laws 1914, states expressly that the commissioners shall have full control in the district. If they have full control the supervisors can have none, much less full control or jurisdiction. Jurisdiction without control or power to control and without the right to do a solitary thing would not avail anything. If the supervisors don't aid in every way possible to assist in getting the control and jurisdiction out of their hands, they will be prodded by the persuasive remedy of mandamus.

It is very true that section 170 of the Constitution provides that the full jurisdiction delegated to the supervisors to be "exercised in accordance with such regulations as the legislature may prescribe" but the legislature cannot, by prescribing regulations which deprives the supervisors of every vestige of jurisdiction or power to do anything, do indirectly what cannot be done directly. *Supervisors* v. *Arrighi,* 54 Miss. 668; *Board* v. *Callender,* 90 So. (Miss.) 722.

We will not burden the court with a further comparison of the chapter 173, Laws 1914, and chapter 174, Laws 1914, as amended by chapter 169, Laws 1916, and which later act was held invalid as repugnant to section 170, Constitution 1890, but suffice it to say that the Act of 1916 is mild as compared to chapter 173, Laws 1914, when it comes to depriving the supervisors of jurisdiction. We think if there was nothing more than the fact that in the Act of 1916, it is expressly stated that the supervisors shall retain and not in any manner be divested of general jurisdiction, when the act here involved does not, would be enough, but by reading the chapter 173, Laws 1914, it will be seen the supervisors' hands are tied and they are utterly impotent as to all roads, ferries and bridges in the district, and as to that part of a county they are without any authority whatever. To restate by way of argument, why

the supervisors can do no single act in the district, would be to simply repeat the plain words of the statute, with the statute worded as it is, and conferring the powers therein conferred on the commissioners and taking it away from the supervisors as it does, there could be then placed in the statute in box-car letters the words: "But the supervisors still shall retain general control," and it would be unavailing because the act itself clearly states what the commissioners are to do and when they do it there is nothing to be done by anybody else. Their discretion is supreme and not once is the board of supervisors to be consulted. The commissioners even locate the roads, build them, exercise the right of eminent domain, let bids, fix payment for work, etc. The supervisors cannot let a bid much less pass on it. Suppose the board of supervisors wanted to build a road in the district. How far could they get before being stopped if this law is valid? Suppose they tried to build a road in one place in the district and the commissioners favored another location. If this law is valid who would be the supreme power in this matter? You only have to turn to the pages of the act where the wording is plain.

On this point, the case of *Board of Supervisors of Claiborne County* v. *Callender,* 90 So. (Miss.) 722, decided by this court on February 27, 1922, is directly in point. This case had under consideration chapter 176, Laws 1914, above referred to as being held constitutional in *Prather* v. *Googe,* 108 Miss. 670, for the reason that in chapter 176, everything done had to be done by and with the consent of the supervisors. But now when this same chapter 176, as amended by chapter 277, Laws 1920, comes again before the court, while the constitutionality of the act is not involved, there arises a question of where the commissioners want to locate a road in one position, and the supervisors want to locate it in another, still the court clearly holds the discretion of the board of supervisors is supreme. Now bear in mind chapter 176, Laws 1914, as amended by chapter 277, Laws 1920, gave the commissioners management

and supervision subject to the approval at all times and in all things of the supervisors and they could do nothing unless ratified by the supervisors.

How utterly different is chapter 173, Laws 1914, which does not require that anything done by the commissioners be approved or ratified or subject in any way to the will of the supervisors.

So this Callender case is strong authority on the point that the regulations of the legislature must not allow a conflict between the board and anyone else that would displace the authority and discretion of the supervisors. In other words, the supervisors are supreme in their sphere and any additional officers created to perform acts with reference to roads, ferries and bridges must be subservient to and not superior to the supervisors.

COOK, J., delivered the opinion of the court.

Acting under the provisions of chapter 173, Laws of 1914, the board of supervisors of Harrison county created and established a separate road district, embracing a part of supervisor's district No. 3 of said county and including the municipality of Pass Christian. Thereafter appellees, land-owners in this proposed road district, filed a bill of complaint in the chancery court alleging that chapter 173, Laws of 1914, is unconstitutional, and procured the issuance of a temporary injunction restraining the appellant, the tax collector, from collecting the taxes or assessments levied against their property under the terms of the act. In the court below there was a decree overruling a motion to dissolve the injunction and holding the said chapter 173 unconstitutional, and from this decree this appeal was prosecuted.

The sole question presented for decision by this appeal is the constitutionality of the said chapter 173, Laws of 1914, and for the purpose of disposing of this question we deem it unnecessary to set out the many lengthy provisions of the act.

Section 170 of the Constitution of 1890 provides that:

"The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe."

The jurisdiction of the boards of supervisors over roads, ferries, and bridges cannot be destroyed or withdrawn by the Legislature under the guise of regulating the manner in which this jurisdiction shall be exercised. Chapter 173, Laws of 1914, attempts to provide a method by which practically all jurisdiction over roads, ferries, and bridges may be withdrawn from the board of supervisors and vested in road commissioners. In so providing the chapter is clearly in conflict with section 170 of the Constitution and is therefore void. The provisions of this chapter are somewhat similar to, and in their restrictions on the jurisdiction of the boards of supervisors equally as drastic as, the provisions of chapter 169, Laws of 1916, which chapter was held unconstitutional in the case of *State ex rel. Salter* v. *Board of Supervisors*, 111 Miss. 867, 72 So. 700.

The decree of the court below is affirmed.

*Affirmed.*