TRAHAN et al. v. STATE HIGHWAY COMMISSION et al.

(Division B. Nov. 27, 1933. Suggestion of Error Overruled Jan. 8, 1934.)

[151 So. 178. No. 30719.]

734

736

**L. T. Kennedy**, of Natchez, and **E. G. Williams**, of McComb, for appellants.

738

**Price & Price,** of Magnolia, and **E. R. Holmes, Jr.,** Assistant Attorney-General, for appellees.

744

Argued orally by **L. T. Kennedy**, for appellant, and by **E. R. Holmes, Jr.**, and **J. H. Price**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellants are taxpayers of Pike county, and own and reside upon property abutting on that portion of state highway No. 51 which heretofore has been maintained east of the Illinois Central Railroad from Magnolia to the Louisiana line through the town of Osyka. The location of the link of highway aforesaid is composed of two early federal-aid projects designated as "F. A. P. No. 42" and "F. A. P. No. 193." This link is affected with turns and crooks and with two grade crossings over the main line of said railroad, one at Magnolia and the other at Osyka. Some time not long before the institution of this litigation, Federal-Aid Project No. 223 was laid out from Magnolia to the Louisiana line, along the west side of the railroad with the object to straighten the said link in said highway, to shorten its mileage and to eliminate the two grade crossings aforementioned—as is now general requirement in order to avail of the aid of federal road building funds. The state highway commission has co-operated with the federal authorities in the matter of adopting the new location and has proceeded to recognize that location as a part of said Highway No. 51 and of the state highway system. Appellants exhibited their bill in the chancery court of Pike county to enjoin the change of location, and from a decree dismissing their bill they appeal to this court.

Appellants raise and rely upon several points of statutory and constitutional law as follows:

(a)  The contend that the statutes prescribing the powers and duties of the highway commission do not authorize the commission to lay out a new road, departing in any substantial respect from the location of the old road, and that its only authority is to reconstruct, repair, and maintain such existing highways as have been designated by the Legislature as state highways.

(b)  That in any event the commission is without power under the statutes to lay out and construct any new link of more than ten miles in length whereas this new link is eleven miles in length.

(c)  That if the statutes do attempt to give any such power to the commission, as the commission is in this case proceeding to exercise, the statutes are unconstitutional because beyond the limitations allowed by section 170, Constitution of 1890 as amended.

(d)  That if mistaken in all the foregoing contentions, appellants would still be entitled to prevail because to carry on the work aforesaid the commission is expending public funds for which no appropriation has been made in the manner prescribed and limited by the Constitution.

(e)  And, finally, that the chapter of the Code creating the highway commission is unconstitutional and void for the reasons: First, that there can be no commission without commissioners, and the section in said chapter providing for the election of commissioners fixes a time for their election upon a date other than that prescribed by the Constitution for the election of state officers; and, second, the Code chapter provides no method for the compensation to abutting owners as required by section 17 of the Constitution for their damages when the highway is moved to a new or changed location—in this case at some places as much as four miles away.

Taking up these contentions in the order stated, we find that by chapter 278, Laws 1924, as amended by chap-

ter 218, Laws 1926, and chapter 45, Laws 1928, Extraordinary Session, the Legislature designated a system of state highways and in dealing with the highway known as Highway 51, of which that here in question is a part, the Legislature designated that highway in the following language: That there shall be a state highway "from the Mississippi-Tennessee state line near Horn Lake via Hernando, Senatobia, Como, Sardis, Batesville, a point near Pope Grenada, a point near Durant, Canton, Jackson, Hazlehurst, Brookhaven, a point near Summit and McComb, to the Mississippi-Louisiana state line near Osyka." The act did not in terms require the state highway thereby designated to follow the existing roads between the points mentioned; but the language used tends to negative that contention because of the use of words "near" in connection with some of the principal points mentioned. Moreover, these acts designated as state highways other roads which at the time were not even in existence. Under the code chapter the highway above designated was continued as a state highway by section 4997, Code 1930, which enacted that "highways designated by law as state highways are continued as such," and we find no special enactment in the said Code chapter which would operate to withdraw this particular highway or any part of it from the general section just quoted.

We shall show, in connection with what we shall later say in respect to section 170 of the Constitution as amended, that the aforementioned designation of said state Highway No. 51 by giving the principal points through or near which it should run was a sufficient designation to bring that highway so designated within the jurisdiction of the state highway commission, and that the commission in its construction, reconstruction, repair, and maintenance was not and is not required to follow the precise lines of that highway as it then existed. As to roads under its jurisdiction, the commission is empowered by the statutes "to locate, relocate, widen, alter, change, straighten, construct, or reconstruct" with full authority

to lay out, change, straighten, and to secure the rights of way for that purpose, sections 4998, 5006, Code 1930; and as particularly pertinent to this case, the commission is authorized and empowered to locate and construct a link of state highway on one side of a railroad in order to avoid a grade crossing or crossings, paragraph (g), section 5006. The language of the several sections of the statutes giving these powers to the commission is broad enough, and apparently was so intended, to cover changes of location and the straightening of links of road such as here in question, and as the commission has, in conjunction with the federal-aid authorities, proceeded to do in this case, particularly when taken in connection with the avoidance of the railroad grade crossings. We are not permitted to give that language any restricted or overtechnical interpretation, which we would be required to do were we to sustain the contentions of appellants in that respect.

Appellants' next contention is that the new location is of new construction and is of more than ten miles in length, and, therefore, exceeds the limitation prescribed by section 4995, Code 1930. This section is so awkward in its language and so obscure in expression that it may well be taken as meaning either of three or four different things. As to what it was intended to mean we can only guess. In that situation, under familiar principles, we must adopt the interpretation placed upon it by the departments which have been acting under it, and that interpretation by them is and has been that the section refers to a gap or link of unimproved road which as a continuous or connected road had not up to that time been completely taken over by the commission for maintenance, that it has reference to a connecting gap, not to the straightening of a state highway which is already connected, which latter is the case here. Whether such an interpretation would render the section invalid under the Constitution as to an attempt to connect two dif-

ferent state highways, we need not pause to inquire, it being sufficient to say that the section is not applicable to this case.

We now arrive at the contention by appellants that to give to the statutes the interpretation contended for and acted upon by the highway commission in this case would place those statutes beyond the field allowed to them by section 170 of the Constitution as amended. That section, as it was originally ordained, confers full jurisdiction over roads and bridges upon the boards of supervisors. In 1924 (see Laws 1924, chap. 143) the section was amended by adding thereto as follows: "Provided, however, that the Legislature may have the power to designate certain highways as 'state highways,' and place such highways under the control and supervision of the state highway commission, for construction and maintenance." Appellants argue that in order that any particular highway shall be taken from under the jurisdiction of the board of supervisors and placed under that of the highway commission, that highway must be designated by the Legislature as a state highway, and also that such a designation in order to become operative must have a sufficient constitutional measure of definiteness. From this appellants further contend that the designation in order to be definite must refer to existing highways and as they exist at the time of the designation. In other words, it is the argument of appellants that the Legislature could not designate a highway which at the time of the designation did not exist, that there could be no definite designation or pointing out of something which is nothing, and that, therefore, in designating a highway it must be an existing highway and as it exists. And thus appellants arrive at the conclusion that since a change of the location and a straightening of the highway is something substantially different from an existing highway, that since it brings into existence something which did not exist, the Legislature was without juris-

diction in respect to such a change so far as concerns the making of the changed location a state highway, and that the Legislature having no such power or jurisdiction it could not delegate that which it did not have to the highway commission.

In construing a constitutional provision effect must be given to every word in it. Therefore we look beyond the word ''designate'' in the provision which we are considering to see the connection in which it is used; and we find that the connection is that certain highways are to be designated as state highways for construction and maintenance. The word ''construction'' means in its ordinary sense to build or erect something which theretofore did not exist. If then we limit the word ''designate'' so as that it can apply only to existing roads, we cut down the meaning of the word ''construction,'' so that it will become ''reconstruction.'' We cannot take any such liberty with the word ''construction'' and thereby depreciate its meaning and importance. Rather than translate the word ''construction'' as meaning no more than the inferior word ''reconstruction,'' it would be more permissible to hold that the constitutional provision means that the allowance to the Legislature was to delineate or designate certain new lines of roads to be constructed—for new lines can be designated and new lines are constructed not reconstructed.

All of this brings us to the maxims of constitutional interpretation that the court shall look to the circumstances under which the constitutional provision was ordained, the objects designed to be accomplished by it, the evils to be avoided or cured, and thereby to arrive at the reasonable meaning and real intention of the provision, keeping in mind that such an ordinance is intended to stand and to serve its purposes not for to-day alone but for a long, long time. Moore v. General, etc., Corp., 155 Miss. 818, 125 So. 411. Before the adoption

of the quoted amendment to section 170, roads had been chiefly of a purely local concern. Most of them existed as they were laid out by pioneer settlers, and many followed the path by which the cow came home. To this was added further turns and curves to follow the fence lines of farms and pastures and to take the road out of its way to the premises of persons of local political influence and later to bend them into the new towns and villages as they successively came into being, some of which have flourished awhile and then disappeared.

But because of the changed condition of the times brought about by the general use of motor transportation by which the principal highways were brought into service for long distance transportation, and of a rising importance in this respect far beyond that of a merely local nature, the demand became imperative to convert the local county system in part into a state system with modern improvements, reduced mileage, the elimination of wasteful curves and dangerous crossings. It was in response to the irrepressible demand for an improved system for long-distance motor travel, a demand which would as to state highways place the interest of the state at large above that of particular localities, that the constitutional amendment was adopted; and surely it was the purpose that modern engineering skill should be brought to bear, that the old curves and windings of the primitive layout of those that were to be made state highways should be relegated to the past to which they chiefly belonged, that these main state highways should be straightened so far as practicable between the principal points in the highway, so that thereby the costs in maintenance in all the years to come should be reduced by the reduction in distance and the laying out of better locations and that time and expense to travelers might be conserved. This is what the constitutional amendment to section 170 must have meant to allow and to secure; it is what the legislative acts in question have

enacted shall be accomplished; and it is what the commission in this case had done and what it had the legal and constitutional right and duty to do. And these are the considerations which lead us to the conclusion that it was a sufficient designation of Highway No. 51 to give the principal points from the Tennessee to the Louisiana lines through which or near which the road should run and that the highway commission was thereupon empowered to follow the old line of the road wherever practicable and usable and to depart from it to straighten it and to find better locations and to eliminate dangers and distances wherever, in its discretion, the latter course has been or shall be found to be best. Rockhill v. Benson, 97 Or. 176, 191 Pac. 497; Boyden v. Dept. Pub. Works, 349 Ill. 363, 182 N. E. 379. Compare Board of Sup'rs of Lauderdale County v. Wilson, 148 Miss. 316, 114 So. 609.

Next is the contention that in this work the highway commission is expending public funds for which no constitutional appropriation has been made. It is the province and duty of the judicial department to restrain officers so as to confine them within their legitimate field in the performance of their duties, and this must be done on the application to the court of any party who suffers special injury in his person or property as a direct consequence of the acts of officers beyond the prescribed field of their authority. Hobbs v. Germany, 94 Miss. 469, 49 So. 515, 22 L. R. A. (N. S.) 983. It thus became our duty to inquire and determine whether these appellants were being injured by unauthorized acts of the highway commission, that is to say, by action beyond the limits or bounds or field within which the commission is permitted to function. Compare Rotenberry v. Yalobusha County, 67 Miss. 470, 7 So. 211; Hurley v. Levee Comm'rs, 76 Miss. 141, 23 So. 480; Henry v. State, 87 Miss. 1, 39 So. 856. We have determined that the highway commission in the case in hand is acting in that re-

spect within the field and limits of its rightful authority, from which it follows that appellants have suffered no legal injury at their hands. It therefore follows further that as to the expenditure of the funds aforesaid appellants have no more legal concern than any other of the large body of the citizens and taxpayers of the county, and in such case it is settled that such taxpayers, showing no special legal injury to themselves, have no right of action in respect to the expenditure of such funds, unless and until they have applied to all officers whose duty it is under the law to interfere. McKee v. Hogan, 145 Miss. 747, 110 So. 775. See, also, American Oil Co. v. Interstate Wholesale Grocers, 138 Miss. 801, 104 So. 70. The limitation aforesaid upon the right of a citizen and taxpayer to institute and maintain litigation against officers is essential to an unimpaired efficiency in the administration of public business; otherwise officers charged with arduous duties and labors would have their time and attention, frequently if not constantly, broken by being hauled about here and there to respond to suits. And this question is raised by the general demurrer, for such a demurrer challenges not only the stated facts as to whether as stated they make out a sustainable case, but also whether the complainants have a sufficient legal or equitable interest in those facts to support a decree in their favor. Hunt v. Booth, Freem. Ch. 215.

Both sides to this controversy have requested that we waive the point last taken and decide the question whether there has been a valid appropriation of the funds being used by the highway commission in its operations here and throughout the state. If we had the option to comply with that request, we would do so; but we are precluded from it because of the principle, which is among the fundamentals of judicial procedure, that no court shall decide, or interfere in, any question unless and until a party having the right to relief in respect to that question is asking it of the court. A decision other-

wise would be purely advisory, of no force, and would not be a precedent that would bind any person or court.

Finally, there is the contention that the Code, section 4989, creating the highway commission is void, because there are no commissioners; the chapter placing the time for their election at a date not allowed by the Constitution. Appellants point out that the highway commissioners are state officers because so denominated in the statute and because their duties and jurisdiction extend to the entire state; and appellants point to sections 102, 140, 143, and 252, of the Constitution which provide that all elective state officers holding four-year terms shall be elected at the general election, whereas under this highway statute the commissioners are elected in congressional election years. Admitting, for the sake of the argument, that the present commissioners are not de jure officers because not elected at the time required by the Constitution, they are nevertheless de facto officers under section 2899, Code 1930, and so long as not challenged in the manner provided by law, their acts are as valid and effective as if they were lawfully elected. The Code chapter creates the office of highway commissioner, and the provision as to their election, if invalid, is separable from the other provisions, not only under general principles, 6 R. C. L., p. 133, 59 C. J., p. 665, but also under section 10, Code 1930.

Appellants' other contention, that the entire highway chapter is unconstitutional and void, is upon the ground that there is no provision in the chapter for the payment of damages to an abutting property owner, when the highway commission abandons the highway abutting his property, and moves it away to another location. Again, this is a question touching which appellants have no justiciable interest. There is no legal damage to them as abutting property owners by the removal of a state highway, so long as there remains a public highway, maintained as such, in substantially the same location. Appellants aver that the commission will abandon the

federal-aid routes Nos. 42 and 193 as state highways, but this is not equivalent to an averment that thereupon jurisdiction of said routes will not be promptly resumed by the proper county authorities and will not then be maintained as a county public road. On the contrary, the facts disclosed by the exhibits to appellants' bill are such as to make certain that if the board of supervisors of the county do their duty, as we must assume they will, the said road east of the railroad will be continued as a public road and that is all under the law that abutting property owners are entitled to demand. See cases cited 13 R. C. L., p. 73. Compare Morris v. Covington County, 118 Miss. 875, 80 So. 337; Jackson v. Monroe County, 124 Miss. 264, 86 So. 769; Berry v. Board, 156 Miss. 629, 126 So. 405. Appellants point to no provision of the law, and we know of none, which would prevent the board of supervisors from retaking a public road abandoned as a state highway. This makes it unnecessary to decide whether, as has been suggested, the state highway commission can maintain two branches of highway between the same points, as we are informed the commission has done in some cases.

It will be observed that we have said in the foregoing paragraph that there is no legal damage to appellants, as abutting property owners, so long as there remains a public highways maintained as such in substantially the same location, and that the bill fails to show that this latter will not be done. The question has arisen in our conferences over this case, whether a taxpayer who has suffered no special legal injury may be heard to complain against the action of officers although the officers may in the particular case be acting beyond the field or bounds of their authority, or whether when officers are acting beyond the field of their authority a person who suffers special actual injury, as distinguished from special legal injury, may complain. In deciding the question whether the officers here were acting within the *field*

of their authority in making the change of location, we have resolved the doubt in favor of allowing complaint, as to the particular question just mentioned, in behalf of one who has suffered special actual damage; but we so resolve the doubt only as to this case, reserving that specific question to be definitely decided as a matter of binding precedent until it shall be definitely raised and argued by the parties litigant, which has not been done by them in this case.

Affirmed.