STATE HIGHWAY COMMISSION *v.* McGOWEN, DISTRICT ATTORNEY, *ex rel.* HINDS COUNTY.

(In Banc. Nov. 26, 1945. Suggestion of Error Overruled Jan. 14, 1946.)

[23 So. (2d) 893. No. 35935.]

Greek L. Rice, Attorney General, by James T. Kendall, Assistant Attorney General, and Green & Green and E. R. Holmes, Jr., of Jackson, B. H. Loving, of West Point, and Russell Wright, of Meridian, for appellant.

856

Watkins & Eager and Watkins & Avery, all of Jackson, for appellee.

858

Greek L. Rice, Attorney General, by James T. Kendall, and Green & Green and E. R. Holmes, Jr., of Jackson, B. H. Loving, of West Point, and Russell Wright, of Meridian, for appellant, on suggestion of error.

Argued orally by **E. R. Holmes, Jr.**, and **B. H. Loving**, for appellant, and by **W. H. Watkins**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

The district attorney, pursuant to an order of the board of supervisors of Hinds County, for the use of said county, filed a petition for mandamus against the State Highway Commission in the circuit court thereof, which was tried by the judge without the intervention of a jury, which was waived. Judgment was for the county, as far as the appraisement was concerned, and the Highway Commission appealed.

There was much pleading, but the case primarily dealt with the construction of Section 5004, Code 1930, Section 8036, Code 1942, and the meaning of ''final location'' of a highway in said statute. The appellee contended that

the location of Highway 51 through Hinds County was final in the sense of the statute, and the Highway Commission insisted it was not final; and the same contentions were made as to Highway 80 from the eastern edge of Clinton to the Warren County line. This issue involves also the question of whether demand had been made or was necessary to be made by the board of supervisors on the Highway Commission. It also necessitates the determination of the question whether we are called upon to decide a factual issue or to review the discretion of the State Highway Commission. The prayer of the petition for mandamus was that the Highway Commission be compelled to appraise and reimburse Hinds County for the value of the paving on said highways.

The purpose of the Stansel Act, Chapter 47 of the Laws of 1930, was to create a new Highway Commission for the purpose of establishing and maintaining a complete and coordinated highway system in Mississippi, and connecting with highways in other states so as to help form National highways. The Commission thus created consisted of three members, with ample powers, whereas the old Commission of eight members, superseded by the Act of 1930, had no powers and its only functions of value were as an intermediary between the Federal Government Bureau of Roads and the boards of supervisors, and advisory status as to the boards of supervisors in locating roads and letting contracts for the construction of roads in the respective counties. Such an arrangement obviously was a cumbersome and limited organization, with eighty-two different authoritative bodies in that number of counties in the state. This was because Section 170, Constitution of 1890, conferred exclusive jurisdiction over roads, ferries and bridges in the boards of supervisors, to be exercised in accordance with such regulations as the legislature might provide. In attempting a unified highway system in Mississippi, the legislature passed Chapter 173, Laws of 1914, which was held violative of this provision of the Constitution in that it at-

tempted to provide a method by which practically all jurisdiction of the boards of supervisors over roads, ferries and bridges would be withdrawn from such boards and vested in a road commission. Havens, Tax Collector, v. Hawes et al., 128 Miss. 650, 91 So. 397.

By Chapter 143, Laws of 1924, after an election authorizing such action, the Constitution was amended to provide that the legislature have the power to designate certain highways as state highways and place such highways under the control and supervision of the State Highway Commission for construction and maintenance. Pursuant to that authority, the legislation thereafter dealing with the subject may be found in Chapter 278, Laws of 1924, as amended by Chapter 218, Laws of 1926, and subsequent amendments, finally merging into Chapter 47 of the Laws of 1930, in which chapter Section 5004 was a part, same being now Section 8036, Code of 1942, in which Code the legislation governing is designated Title 30 and with the subject Highways. The pertinent statute, Number 8036, reads as follows, so far as the same is material to the consideration of this case: "Whenever in the due course of the construction program of the state highway commission the time shall be reached when any paved highway or section thereof heretofore built in whole or in part at local expense would have been regularly constructed as a part of such program, and connection is made with such paved highway and same becomes a part of a continuous paved state highway, the state highway commission shall cause to be appraised the pavement on said highway, or the portion or portions thereof that it is to be utilized as a part of the final location of the continuous completed paved state highway so connected. Such appraisal shall take into consideration the original cost of such pavement and the wear, depreciation and deterioration of same, and the state highway commission shall pay to the local unit at whose expense the road was constructed the proportionate part contributed or paid by said local unit represented in the then

existing appraised value. Such payment may be made under such terms as may be agreed upon with the governing body of such local unit, but in no case shall reimbursement be made in less than ten nor more than twenty approximately equal annual payments. In the event highway bonds of such county or district are outstanding, the commission may pay to such local unit semi-annually a sum sufficient to meet the payment of principal and interest due on the outstanding bonds, subject to the above limitation, until the total sum ascertained to be due shall have been paid. Should any surplus then remain, annual payments shall be made in sums amounting to not more than one-tenth of the total amount first ascertained to be due and not less than one twentieth of such amount, until the total sum found to be due shall have been paid. Interest on the unpaid portion of the amount found to be due the local unit shall be included in the annual payments.''

At the outset, we feel it necessary to say that in our judgment the resolution adopted by the Highway Commission some weeks after this suit had been instituted, many years after the highways in question had been completed, and several years after a majority of the board of supervisors had called on the Highway Commission then in session and asked appraisal, has no evidential value in this case and is ineffectual as an exoneration per se of the Highway Commission. If it should be determined that the law and the facts dehors the same justify us in reaching substantially the same conclusions therein expressed, since appellee joined issue in denial of the findings of fact and law in said resolution by appellant, then we should so decide on such law and facts as in any other case. With reference to the claim of discretion by the Highway Commission, the appellant cites many cases but we do not believe that they are authority against the conclusions we have reached with reference thereto, which is in harmony with our announcement in the case of State ex rel. Cowan, District Attorney, v. State High-

way Commission et al., 195 Miss. 657, 13 So. (2d) 614, 619, quoting from the case of Madison County v. Mississippi State Highway Commission, 191 Miss. 192, 198 So. 284, wherein it is said: " 'If the statute invoked by the appellant is effectual to require the appellee to cause the appraisement to be made, then the circuit court is vested with full power under section 2348 of the Code, supra, to grant relief by mandamus on petition of the state, by its attorney general, or a district attorney, at least to the point of compelling the appellee to cause the links or sections of the highway referred to in the bill of complaint to be appraised, and may also punish as for contempt any refusal to obey its mandate under section 2353 of the said Code of 1930.' "

In the Cowan case the Court made this statement:

"It will be noted that the wording of Section 5004 is that, when the described conditions come about, 'the state highway commission shall cause to be appraised the pavement on said highway', and, 'shall pay' therefor. The word shall, directed as it is by the legislature to the creature of its own creation, the highway commission, is not doubtful; the command is positive and clear; it leaves no discretion in the Commission.

"It is also urged, as an intendment fairly deducible from the various statutes, that the Legislature intended to take over the county roads and bridges without paying anything therefor. The title to Section 5004 is 'Reimbursement for pavement already constructed.' The section prescribes in detail the manner and the limits how and within which the reimbursements are to be made, including the method of handling outstanding bonds of the counties, rate of interest, etc. The statute would be without object and meaning if the asserted contention should prevail."

The case of Trahan et al. v. State Highway Commission et al., 169 Miss. 732, 151 So. 178, cited by appellant, declares nothing in conflict with the announcement in the Cowan case, in our judgment. In the Trahan case,

Pike County had constructed an old highway with many curves in it and improperly located, which the Highway Commission undertook to relocate, which was sought to be enjoined by adjacent property owners. Pike County was not a party and there was no question of reimbursement involved, and the road had never been connected with the paved highway, or utilized by the Highway Commission as part of its system.

The Court therefore held, since the Highway Commission had discretion in relocating highways, and the property owner had no other interest than such interest as common to other persons in the neighborhood, the property owner had no standing in court to object. In the case at bar, the highways concerned are the subject of a prayer for appraisement and reimbursement for paved highways connected by appellant with a state highway at both of its ends, which had been utilized for many years as a part of the state highway system. The other authorities cited by appellant we think need not be discussed as they seem equally inapplicable to the issue, since we are called on to determine a factual issue and not to review the discretion of the Highway Commission.

We cannot see merit in the point that Hinds County made no formal written demand upon the Highway Commission through its board of supervisors. The facts with reference thereto are that a majority of the board of supervisors of Hinds County in connection with their attorney, during the time when the board was in session, called at the office of the Highway Commission at a time when it was in session, and asked for appraisement and reimbursement. It does not appear in the record that minutes were made by either board, and the reply of the Highway Commission was in effect a denial of the application by the board of supervisors since it failed to grant the request when made, and subsequently took no steps toward making an appraisement, and then after suit was filed entered the resolution denying the relief sought by the county, and is now contesting this lawsuit

seeking the same. So far as has been called to our attention, there is nothing in our statute requiring such a demand by the board of supervisors from the Highway Commission, or that it should be made in writing, or that it should be entered upon the minutes of the board of supervisors or Highway Commission. In support of its position, appellant cites such cases as Wood, Secretary of State, v. State ex rel. Gillespie, District Attorney, 169 Miss. 790, 142 So. 747: which is a case involving mandamus filed by district attorney attacking the validity of a congressional redistricting act of legislature on the ground that it did not conform to the Act of Congress praying that the Secretary of State be compelled to disregard, in preparing ballots, any designations of candidates for Congress from districts. The question of demand was not of significance because the Secretary of State never having incurred the duty of printing statewide ballots, a cause of action had not arisen at the time mandamus was sought.

It was further testified by Mr. Kenna, the Director and an executive officer of the Commission, on behalf of appellant, that if this suit should be dismissed by appellee and demand made for appraisement it would be refused. The question becomes involved in the dominant issue in this case, and that is whether or not before the petition for mandamus was filed the right to the relief sought then existed, and it had then become the official duty of appellant to make such appraisement and reimbursement which had been refused. Anderson v. Robins, 161 Miss. 604, 137 So. 476. It is manifest from the record that a formal written notice would not have availed appellee and the law does not require one to do a vain and useless formality. State ex rel. Davis, Attorney General v. Curtis, Judge, etc., 210 Ala. 1, 97 So. 291; Ex parte State ex rel. Shirley, 20 Ala. App. 473, 103 So. 68; Pugsley v. Sellmeyer, et al., 158 Ark. 247, 250 S. W. 538, 30 A. L. R. 1212; State ex rel. Exnicios v. Board of Commissioners of Port of New Orleans, 153 La. 705, 96 So. 539; Nolan, et al.

v. Boston Firemen's Relief Fund, 236 Mass. 420, 128 N. E. 715; Sovereign Camp, W. O. W., v. McClure, 176 Miss. 536, 168 So. 611, 170 So. 293, and others.

This controversy being between two public bodies, the State Highway Commission and the board of supervisors of Hinds County, even though it should be held that formal written demand ordinarily is required, is not subject to any such rule here because the duty is of a public nature affecting the public at large. In such a case, no demand and refusal of the demand are necessary to lay the foundation for the relief asked by the petition for mandamus. People, ex rel. Busch, State's Attorney v. Green, Judge, et al., 281 Ill. 52, 117 N. E. 764. In the case of State v. Curtis, supra, the Court held that where the person aggrieved claims the personal benefit of the act or duty, whose performance is sought, demand and refusal are held to be necessary as a condition precedent to the relief by mandamus, but where the duty sought to be enforced is strictly of a public nature, there is no necessity for a literal demand and refusal, there being no one especially empowered by law to demand its performance. In such later situation, the law itself stands in lieu of a demand, and the omission to perform the required duty in place of a refusal. Therefore, we do not think that the appellant can complain of the absence of a formal written demand here. High on Extraordinary Legal Remedies, Par. 13.

Highway 51 starts at the Tennessee state line in De Soto County, north of Hernando, ending at the Louisiana state line, south of Osyka. Highway 80 begins at the Mississippi River bridge near Vicksburg and joins U. S. No. 11, ending at a point on the Alabama state line near Cuba, Alabama. Section 8024, Code 1942. They are primary roads. The highways involved in this lawsuit were constructed in the years 1926, 1927 and 1928 under contracts let by Hinds County, the funds thereof being furnished equally by said county and the Federal Government. Highway 51 north of the city limits of Jackson to

the Madison County line was paved with concrete in 1927, as it was south of Jackson from intersection of South State Street and Highway 80 to the Copiah County line. Following the passage of Chapter 47, Laws of 1930, Chapter 122, Code of 1930, Title 30, Code of 1942, this highway through Hinds County was integrated into a connected, completed and paved highway from the Tennessee line to the Louisiana line, according to the judgment of the trial court and the contention of the appellee, but contrary to the contention of the appellant, who contends there has been no final location thereof. It seems to be admitted by appellant that the part of Highway 80 involved here has been finally located except for about seven and seven tenths miles, which the Highway Commission says it intends to straighten.

The paramount question in this case is a factual one in our judgment, and not a question as to the discretion of the Highway Department. The fact to be determined is whether or not the highways involved in the due course of the construction program of the State Highway Commission have reached the time when connection has been made with such paved highway and same has become a part of a continuous paved state highway to be utilized as a part of the final location of the continuous, completed, paved highway so connected. The trial court held that such time had been reached before petition for mandamus was filed, and that the Highway Commission was due to make such appraisement, which they had refused and failed to do. We think the trial court was correct. We are of the opinion that the highways involved come within the statute and have been so for some time. The fact that a comparatively infinitesimal segment of Highway 51 here and there is being straightened, or repaved, or moved, to one side or the other, is a mere detail as to which the Highway Commission has discretion, and the exercise of this discretion would not be in conflict with our holdings here. It must be remembered that this highway system was completed many years ago, and these

roads integrated therein as a part of the planned highway construction in Mississippi. The claim by the Highway Department that it has never considered these highways finally located because at some time or other they had in mind a probable relocation of parts thereof, and to that end, as stated by their witness Kenna, they had been making surveys and maps and accumulating data for years, does not alter the situation even though during part of the period involved there was a "depression," insufficient funds and the difficulties incident to global war. The fact remains that paved Highways 51 and 80 taken over from Hinds County would have had to be constructed by the Highway Commission had they not already been constructed by said county, and that they have become what, in our judgment, is a final location in the completed highway system utilized by the public for a long period of time as a part of a continuous, completed paved state highway in each case. Nothing definite in all of this period of time has been done looking toward any substantial relocation, and the general public has been using the highways, so that the mere formation by the Commission of an inchoate theory of possible altered locations is still nebulous and has not progressed beyond nuances of indefinite cogitation, and certainly has not attained more than the uncertain status of a probe into speculative contemplation. Yet, for a long period, to all practical purposes, and by every practical, visible and convenient test, the location of Highways 51 and 80 has been final. In this connection, final does not mean forever. Here it is more analogous to "complete," and not like the laws of the Medes and Persians, changeless. A highway is more than a mere right-of-way capped with pavement. It is also a course of travel, here made so by statute, so that occasional variations, at intervals, from time to time, throughout the extensive length thereof, would not erase the finality of the location in the purview of this statute, when the pavement has once been so finally completed, as the evidence shows in this case.

This view is sustained, in our judgment, by the case of Wilkinson County v. State Highway Commission, 191 Miss. 750, 4 So. (2d) 298. Details of alterations, of straightening and of replacing along or parallel with the same right-of-way, in the same general direction, would be, as stated, merely operations of maintenance and improvement within the completed system, and not indications of temporariness in the location of a highway, but only expedient variations, having a definite relation to the routes as designated in the act of the legislature and to the specific location by the Highway Commission, and not cancelling finality once attained under the statute and the facts, as here.

In the report of the Director of the Commission to the legislature at the 1944 session, prepared prior to the institution of this suit, it was said that Mississippi had over one hundred million dollar invested in our highway system, a pretty high price to pay for temporary locations for paved highways! It must be. concluded that this is an indication of permanency subject to details of maintenance and change for rectification and improvement, as stated supra.

In the course of the testimony, the Highway Commission, by its witnesses, undertook to give a definition, from their viewpoint, of final location. Witness Kenna said this: "I would answer your statement this way, to say that a road is ever finally located fifty years or one hundred years, you cannot predict what is going to happen, but to me and our engineering personnel, a final location of a road is a road that now for the immediate present· and for the predictable future there is adequate service for the traffic that utilizes that road." The word "predictable" there is rather cryptic, since no limit to its reach into the future is suggested. Had such prediction been made nearly a score of years ago, at the beginning of the period involved, that this highway would adequately serve the public far in the future, the present fulfillment of the prophecy would have justified it. And,

since the same utilization then started is still continuing the appellant, by resolution, adopted after the filing of this suit, cannot alter the factual situation that if by Mr. Kenna's definition it was a final location then, so proven by the course of events in the application of his word "predictable," it was to all practical and necessary purposes a final highway before the petition for mandamus was filed. Witness Monette offered this definition for appellant: "I would say a road is on its final location, after you have made a thorough study of all the conditions, and you had decided that the service was rendered, that it would be on its best location for the public, that it incorporated the latest safety features as to design, width and sight distances." Witness Craig for appellant defined location this way: "In respect to a road the final location in my opinion would be the location that would best serve the needs of the present traveling public, in addition to any public traveling that could be reasonably predicted for the future. That would be where it would be constructed." We are not so much concerned with such attempts at generic definitions of final locations as we are concerned with its meaning under the statute here involved. For the purposes of the statute, it seems to us sufficient to say that a highway is finally located when its route and construction are adequate for present and normally expanding traffic, and that possible subsequent expediency justifying alterations in the exact location of the pavement would not affect its already attained finality, as intended by Section 8036, Code 1942.

When would the incident of relocation, to which appellant's witnesses referred, take place under such definitions? Here, we have nearly a score of years intervening, with heavy traffic, and still none of the very vague cognitations of the Highway Commission have been implemented into any action. It would seem that this passage of time would have given them opportunity to take practical action within the limits of their defini-

tions. In our judgment, the highway came within the statute, and the time for appraisement had been reached before this suit was filed. Highway 51, therefore, long before this action was instituted, had become a continuous paved highway from the point on the Tennessee line to the point on the Louisiana line above stated, with the exception of one or two short links in its northern portion which, for temporary reasons, could not be finally paved. This may not be availed of to displace the operation of the statute, because, if allowed so to operate, the statute could be evaded by any Highway Commission through the single, simple device of leaving uncompleted a mile or two in a long highway. Therefore, to us it seems that Highway 51 had become at the time stated, and within the purpose of the statute, a ''continuous, completed, paved state highway.''

When Highway 51, in the due course of the construction program, reached Hinds County on the north and on the south, it was necessary to proceed through Hinds County and if the existing paved highway had not been there, then the Highway Commission would have been under the necessity, as a regular part of its construction program, to build such a paved highway from north to south through the county. But, instead of building its own paved highway through the county, when it reached the north and south boundaries thereof, it connected its construction at the boundary lines with the paved Highway 51, as theretofore constructed by Hinds County, and thereby made it a part of the continuous, paved highway from the Tennessee to the Louisiana lines. It is undisputed that it was then and ever since has been known and recognized as part of State Highway No. 51, not only by the Highway Commission but by all authorities having to deal with the subject and by the public at large.

But the Commission says that the link so used as a connection, and for all of this length of time, is not to be ''utilized as a part of the final location of the continuous, completed paved state highway so connected.'' Be-

cause, it says, that at some time in the future it is the purpose of the Commission to abandon that part of Highway 51 as now located in Hinds County and to relocate it so as to avoid the congested portion of the City of Jackson, although it is conceded that such purposes have not even yet reached any definite point of determination. As we have indicated supra, the question, upon which this case must turn, is what is meant in this statute by a "final location." Is it to be taken as meaning unchangeable for all time to come, as the Commission seems to contend? If so, it would mean that there never could be any such thing as a final location, and the statute would be without the dignity of any finite purpose whatever. Does it mean that there is no final location so long as the Commission, as presently constituted, says that there is none, which a Commission with a changed personnel may later repudiate, and yet from year to year the highway remains as it was when the statutory connection was made? If this may be answered affirmatively, as the Commission contends, then again there could never be any such thing as a final location, for any Commission could always resolve or speak it out of its character as such.

It is not within our province to consider this statute, or any other act of the legislature, as being merely an expansive literary composition. On the contrary, we must ascribe to it some real and practicable purpose, when and as viewed by men of sound judgment, addressing themselves to a practicable situation. When the continuous state highway was being completed, and in so doing, connection was made with the north and south links in Hinds County, that link was a paved highway, paved with the same character of durable material that the Highway Commission was generally using in its permanent work, and of a width sufficient to furnish safe lanes for passage in each direction. It was laid out upon reasonably straight lines, upon suitable and safe grades and grading, and free from dangerous crossings, and was

sufficient to carry the people of the state with convenience to or through principal points of business or social interests. We think practical men of sound judgment would say at the time of the connection that the link as it existed was suitable to be and become a link in a continuous state highway for a considerable time to come. It is, therefore, in our judgment, a part of the final location as meant by the statute, and the county was entitled to the appraisement for which it prayed.

The same reasoning and consideration and conclusion, in our judgment, must obtain as to Highway 80 from Clinton to the Warren County line and the same result reached.

We are convinced that even the definitions of "final location" by the witnesses for the Highway Commission are generically in harmony with our views as to "final location" specifically here, under the wording of the statute involved. Further, in dealing with the dominant question at issue, we are not controlling, or assuming to control, the discretion of the Highway Commission in locating or relocating highways, but we are saying, merely, that under the facts in this case, already passed, a "final location" was here shown as a fact.

Several other matters are argued but in our judgment are unnecessary to discuss, since we have reached the conclusion that the judgment of the trial court should be sustained, and there are no reversible errors in the record. Therefore, the judgment is affirmed.

Affirmed.

### Concurring Opinion.

**Roberds, J.,** delivered an opinion concurring, in result.

I concur in the result reached in the main opinion, but think it is not necessary to decide in this case whether as a general proposition demand, as between public agencies, is or is not necessary as a prerequisite to in-

stituting an action to require performance by one of them of a public duty. In this case the opinion says "It is manifest from the record that a formal written notice would not have availed appellee and the law does not require one to do a vain and useless formality," citing authorities to sustain the proposition. That is sufficient to dispose of the question in this case, and that part of the opinion holding that the demand-requirement does not apply to public bodies is, in my opinion, dictum and unnecessary.

DISSENTING OPINION.

**Sydney Smith, C. J.,** delivered a dissenting opinion.

The evidence discloses that the paving of the section of the two highways here involved has been connected with the other paving of the highway and, I will assume, have become parts of continuous paved highways, but this is not sufficient under Section 8036, Code 1942, to warrant the issuance of this writ of mandamus. That writ can properly issue when, but not until, the State Highway Commission has decided that these two sections of the highways shall ultimately be utilized as permanent parts of the highways. When the two facts hereinabove set out concurred it became the duty of the Highway Commission to determine whether these two sections of the highways should be utilized as a permanent part of the highways or should be relocated, power to do which is conferred by Section 8023, Code 1942. Trahan et al. v. State Highway Comm. et al., 169 Miss. 732, 151 So. 178. This the Highway Commission did and determined to relocate that section of Highway 51 and a part of that section of Highway 80. With this decision or judgment of the Highway Commission the courts are without the right to interfere by writ of mandamus, if at all, for the power and duty to make it is conferred not on the courts, but on the Highway Commission. State ex rel. v. Henry,

87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340; Thomas v. Price, 171 Miss. 450, 158 So. 206, and authorities there cited; City of Clarksdale v. Harris, 188 Miss. 86, 196 So. 647, and additional authorities there cited.

The Highway Commission has not yet relocated and reconstructed these sections of the two highways, the reasons given by it therefor being that it has not been supplied with funds by the legislature which it could utilize for that purpose without detriment to the public interest and its highway construction program, and, in addition, that for the duration of World War II, for reasons known to all, it was compelled to practically cease and had not been able to resume highway construction. This decision, it is said in effect, is equivalent to a decision, insofar as the rights of the appellee are concerned, that these sectons of the two highways shall remain as permanent parts thereof. The reasons which influenced the Highway Commission are certainly not frivolous, and if their soundness is doubted, which I do not, this Court is without the right to disregard the judgment of the Commission and substitute its own therefor. Shotwell v. Covington, 69 Miss. 735, 12 So. 260; 34 Am. Jur. ''Mandamus,'' Sec. 73.

The rule which should govern here and which this Court has heretofore observed is thus stated in Section 24 (3rd Ed.), of High's Extraordinary Legal Remedies: ''But the most important principle to be observed in the exercise of the jurisdiction by mandamus, and one which lies at the very foundation of the entire system of rules and principles regulating the use of this extraordinary remedy, is that which fixes the distinction between duties of a peremptory or mandatory nature, and those which are discretionary in their character, involving the exercise of some degree of judgment on the part of the officer or body against whom the mandamus is sought. This distinction may be said to be the key to the extended system of rules and precedents forming the law of mandamus, and few cases of applications for this extra-

ordinary remedy occur which are not subjected to the test of this rule. Stated in general terms, the principle is that mandamus will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance, but that as to all acts and duties necessarily calling for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, mandamus will not lie. The application of the rule is universal and its illustrations are as multiform as are applications for the aid of this extraordinary remedy." See also Section 42.

"The paramount question in this case is a factual one" (so stated in the controlling opinion), and the question of fact to be determined is whether the conditions have been met, which, under Section 8036, Code 1942, entitle the appellee to payment for the paving of the two sections of these highways here in question. The circuit court is not equipped for the investigation and decision of this disputed question of fact, either by the trial judge without a jury or with a jury, to which (the jury), in the absence of an agreement to the contrary, questions of fact must be submitted. Section 1119, Code 1942. It is inconceivable to me that the legislature would permit this complicated question of fact, the correct decision of which is of so much importance to the public, to be withdrawn from the officers designated by it to make the decision and be submitted to the judge of a circuit court either with or without a jury, and this cannot be rightfully done in the absence of a statute expressly so permitting.

Moreover, this record does not disclose that the Highway Commission has unduly delayed relocating these sections of the highways, for it does not appear therefrom when they became parts of continuous paved highways. All that is claimed in the appellee's brief relative thereto is that they were such when this action was brought.

As to the section of Highway 80 the Highway Commission's only claim is that it intends to relocate some-

thing over seven miles thereof. Consequently, unless barred·therefrom for another reason, the appellee would have been entitled to a writ directing the appraisement of the remainder of the highway, had the court below been furnished with a description of this seven or more miles to be relocated.

The judgment of the court below should be reversed and the petition dismissed.

**McGehee, J.,** concurs in this dissenting opinion.

DISSENTING OPINION.

**McGehee, J.,** delivered a dissenting opinion.

In addition to the views set forth in the dissenting opinion of the CHIEF JUSTICE I think that the judgment here appealed from should be reversed for the further reason that the extraordinary writ of mandamus should never be issued to require the doing of a useless thing at public expense.

While the judgment of the trial court requires only that the Highway Commission shall appraise the value of the links of paved highway in Hinds County involved herein and which are alleged to have been constructed at a local expense of $451,890.80, the court was also asked in the petition for the writ that the Commission be required to pay for the said links of highway, at their appraised value as of the date of the filing of the suit, and it is the obvious purpose of the county in seeking to have this judgment affirmed to then proceed to ask the court to compel the Commission to pay for the highways in question. Otherwise the appraisal could serve no useful purpose, and, therefore, the court should not require an appraisal to be made at public expense in obedience to a writ of mandamus.

Moreover, the court as a basis for requiring the said links of highway to be appraised should not anticipate

that the legislature might perchance at some future time make available the necessary funds with which the appraised value thereof could be paid. If, on the other hand, the Highway Commission has the funds already available and the law specially enjoins upon the Commission the duty to do that which is here sought to be compelled—a necessary requisite to the issuance of a writ of mandamus in any case—and without any precedent action being hereafter taken by the legislature in the premises, then the trial court should have rendered a judgment requiring both an appraisal of the highways and payment of the appraised value thereof, as prayed for by the county, if the facts were deemed by the court to be such as to warrant the issuance of the writ of mandamus for any purpose.

The judgment appealed from herein is not as harmless as it may seem. It can be invoked as a precedent to require the Highway Commission to make appraisals in all other counties having links of such paved highway constructed in whole or in part at local expense, and upon a petition filed by the City of Jackson in that behalf an appraisement of the value of North State Street and South State Street, which together form a link of Highway 51 as presently located from the northern corporate limits of the city to the underpass on Highway 80 in South Jackson, may be compelled as well as the granting of similar relief to every other municipality in the state, the streets of which now form a link in a continuous paved state highway, since the statute in question is not limited to counties as the only local units allegedly entitled to such relief.

Since the statute contemplates both an appraisal of and payment for such links of pavement, for the reason that the appraisal could serve no useful purpose unless payment is to be made, it is impossible to forecast either the enormous cost of the appraisals alone throughout the state and the extent to which the undertaking will disrupt the work of highway construction and maintenance

or to how great an extent payment of such appraised values will retard the proposed farm-to-market road building program, whether the Commission shall use its own official personnel and engineers or employ other persons to do the appraising and whether it shall pay for these links of highway out of gasoline funds already designated for intended construction and maintenance or pledged as the sole security for the payment of outstanding bonds heretofore issued for highway construction.

Therefore, because of the importance of the case now before us, as well as from a conviction that the legislature has for many years treated the particular section of the Act of 1930 here involved as a wholly obsolete or dead-letter law in that it has failed to specifically designate any funds for use by the Highway Commission in carrying out its provisions, and has, on the other hand, continually undertaken to ear-mark the funds for other and different purposes when making them available to the Commission, I feel impelled to set forth my reasons for not concurring in the controlling opinion of the Court in this case.

It was no doubt the intention of the legislature of 1930, when it enacted Chapter 47 of the Laws of that session (now Section 5004, Code of 1930, Section 8036, Code of 1942), that whenever in the course of the highway construction program the time should be reached that a link of paved highway constructed at local expense would have been regularly constructed by the Highway Commission and "connection is made with such paved highway and same becomes a part of a continuous paved state highway" and to be "utilized as a part of the final location of the continuous completed paved state highway so connected," the said commission should cause to be appraised the pavement on such highway which had been constructed in whole or in part at local expense, and should pay to the local unit the proportionate part contributed by it for the cost of the same according to its "then existing appraised value," taking into considera-

tion "the original cost of such pavement and the wear, depreciation and deterioration of the same," but this intention was manifestly based upon an anticipated issuance of highway construction bonds for such purpose as a part of the contemplated construction program, and not with any thought that said legislature could bind the succeeding state administrations to use the gasoline taxes or license tax revenues at this late day either for defraying the cost of appraisals not yet made or for paying the value of such links of highway as of the time of the filing of suits by the local units in that behalf—an authorization not even attempted to be made in the statute as enacted.

Moreover, no succeeding legislature has either directly or indirectly manifested any intention whatever that such links of highway should be appraised or paid for out of current revenues. In fact they have negatived such intention by pledging a portion of the gasoline funds collected by the state to the payment of a $60,000,000 highway construction bond issue, the entire proceeds of which have long since been entirely expended, and by allocating the remainder of such gasoline funds to the counties, and which funds so allocated to the counties have been and are being used in paying off bonds issued by the local units for constructing the links of highway with which the "connection" was made as parts of continuous state paved highways, and for other purposes.

Nor can it be said with any degree of assurance that any legislature subsequent to 1930 has felt obligated to carry out the provisions of this statute by setting aside any part of the proceeds of the road construction bonds for that purpose. It was not until 1936 that any funds were made available to the Highway Commission for the construction of highways either from bonds issues or otherwise, assuming that reimbursement to the local units for paved highways already built is to be deemed "construction" within the meaning of Chapter 182, Laws of 1936, authorizing the issuance of $23,000,000 of high-

way construction bonds, or Chapter 130, Laws of 1938, authorizing the issuance of $60,000.000 of such bonds out of the proceeds of which the first issue was to be taken up and paid, and which said bond issues were authorized in order to "match" federal aid funds designed to provide employment in future construction work.

At any rate, the proceeds of said bond issues have been expended and the revenues to be derived from gasoline taxes have been irrevocably pledged as the sole security for the payment of the said $60,000,000 bond issue as hereinbefore stated. The Court in a three to one decision in the case of Bank of Morton v. State Bond Commission (Miss.), 199 So. 507, upheld the constitutionality of Chapter 109, Laws of 1940, authorizing the issuance of refunding bonds with which to take care of the maturing semi-annual payments due on the said $60,000,000 bond issue, and so as to enable the Highway Commission to, use the current gasoline taxes for future construction and maintenance, although said funds were pledged as security to the bond holders as aforesaid. This was held not to be in violation of Section 16 of the State Constitution against the impairment of the obligation of a contract, and evidently upon the theory that there would remain sufficient current gasoline funds with which to take care of the future semi-annual installments on the original bond issue when the same should become due. Nevertheless, it has become necessary that other refunding bonds should be issued pursuant to similar acts of the legislature subsequently passed for that purpose. It is now pertinent to inquire whether this security in favor of the original bondholders is to be further impaired by compelling the Highway Commission to appraise and pay for all links of highway constructed at local expense and to the probable complete depletion of such current revenues. It will necessarily follow as an incident to the affirmance of the judgment here appealed from that every other county and the municipalities sim-

ilarly situated would be entitled to demand such an appraisal and payment.

It is to be conceded that the legislature has been aware of the fact at all times, through a period of many years, that the Highway Commission has not undertaken to either appraise or pay for a single mile of the paved highways which were built at local expense; that in order for the Commission to carry on the work of needed construction and maintenance the legislature has by language as clear and unequivocal as that contained in the statute here invoked, designated and required all funds which have been made available to the Highway Commission to be used for other specially designated purposes than sought to be compelled by this proceeding.

The statute in question clearly prescribed the time at which the legislature of 1930 intended that such an appraisal and payment should be made in a proper case. The time therefor is fixed by the express language of the Act as being when the time shall be reached that a link of road built at local expense would have been regularly constructed as a part of the paved highway program and "connection is made" with such highway as a part of a continuous paved stated highway on final location, and it is also provided therein that the same is to be paid for according to its "then appraised value," taking into consideration its wear, depreciation and deterioration. If such time has been reached at all in the instant case, as the county contends it has, it was reached many years ago, and, in my opinion, it was never intended that any local unit could wait to avail itself of the remedy of mandamus until long after the proceeds of the highway construction bonds have been expended and until it is too late as a practicable proposition to fairly administer the provisions of this statute as to all the local units involved even if a part of the proceeds of said construction bonds had once been available for such purpose upon the theory that reimbursement to the local units was part of the construction contemplated.

For instance, a portion of Highway 51 as now located through Pike County from Summit to Magnolia is built and over a vitrified brick pavement which was constructed at local expense and is now concealed. Nor would it be at all feasible to appraise much of the concrete pavement in Harrison County along the coast over which a much wider road bed has now been constructed, or those links of such highways in many other localities in various sections of the state. The legislature doubtless had this in mind when the statute was enacted in 1930, and the time was therein fixed for making the appraisement, and the lawmakers are presumed to have known that this Section of the Act of 1930 could not be fairly administered unless the appraisals were made at the time the ''connection'' was made with such links of highway and before the road was reconstructed thereon in many instances.

Nor is it required under the Act in question that the Commission should continue to use the same road as built at local expense and without resurfacing the same, but only that the same be utilized as part of a paved state highway if it is on final location; nor does the Act itself require that the same shall have been paved with ''concrete'' as distinguished from other types of ''pavement,'' nor that it would have been regularly constructed by the Highway Commission of the same width or material—the requirement being that it be connected with and utilized as a part of the paved highway on its final location. Therefore, it will be readily seen that it is wholly impracticable at this late day to appraise and pay for these highways in such manner as would be fair among the several local units similarly situated as originally intended by the legislature.

Moreover, the statute is not self executing in that no funds have been set apart and designated for such purpose. Nor is there any scheme or plan set up in the Act for the making of such appraisals or declaring the effect thereof. Whether the appraisement should be made by

the Highway Commission through its own organization and personnel or by disinterested persons is not disclosed. Whether the appraisal by the Commission itself would be binding upon the local unit without the right of appeal does not appear. Nor is it provided that if the appraisal, which would entail considerable cost, is made by other and disinterested persons, the Highway Commission would have the right to reject or disapprove the same.

The situation is, as contended by the appellant, somewhat analogous to Section 212 of the Constitution which fixes the rate of interest on the fund known as the "Chickasaw School Fund" and other trust funds for educational purposes for which the state is responsible, and which constitutional provision requires that as long as said funds are held by the state the interest thereon shall be six percent per annum from and after the close of the fiscal year 1891, and that the distribution of said interest shall be made semi-annually on the first day of May and November of each year. The Court held in the case of State ex rel. Barron, Dist. Atty. v. Cole, Auditor, 81 Miss. 174, 32 So. 314, that this constitutional provision was not self executing but required a legislative appropriation for its enforcement, and denied the petition for mandamus against the State Auditor to require him to issue a warran to pay the interest, even though the Constitution itself required that it be paid.

But it is urged that this Court has heretofore committed itself in favor of the right of a county to at least have an appraisal made of the value of the links of highway in question, by what is said in the cases of Madison County v. Mississippi State Highway Commission, 191 Miss. 192, 198 So. 284, and State ex rel. Cowan, Dist. Atty. v. State Highway Commission et al., 195 Miss. 657, 13 So. (2d) 614. In response to this contention it should be observed that in the Madison county case, supra [191 Miss. 192, 198 So. 286], it was stated that "assuming for the purpose of this decision, and for that purpose alone,

that the legislature in enacting section 5004 of the Code, supra (a section of Chapter 47, Laws of 1930), intended to create a liability and cause of action in favor of a local unit at whose expense a link or section of paved highway had been theretofore constructed so as to enable such local unit to compel the making of such an appraisement, it is then clear that the writ of mandamus is appropriately designed to afford the necessary remedy for that purpose.'' The opinion in that case further stated that ''if the statute invoked by the appellant is effectual to require the appellee to cause the appraisement to be made, then the circuit court is vested with full power . . . to grant relief by mandamus . . . ''; and that ''therefore, a plain, adequate, and complete remedy by mandamus at law is afforded if a right of action has been granted on behalf of the local unit to compel such appraisal.'' The remedy there sought to be invoked was that of a mandatory injunction, and it will be seen that the court did not hold, but was careful not to say that a cause of action had in fact been created on behalf of the local unit.

However, in the Cowan case, supra [195 Miss. 657, 13 So. 2d 619], the Court held that what was said in the Madison County case therein quoted had the effect of requiring ''at least an appraisal by the Commission,'' but limited the holding to a case where the conditions prescribed by the statute shall ''have come about.'' But in the case now before us, which was heard in the trial court on the pleadings and full proof, it affirmatively appears without substantial conflict in the evidence that Highway 51 in its entirety and 7.7 miles of Highway 80 through Hinds County, which were constructed at local expense, are not to be utilized as a part of the ''final location of the continuous completed paved highway so connected,'' as is required as a condition precedent to the appraisal and payment therefor.

Even though the Court might be of the opinion that Highway 80 from Clinton to the Hinds-Warren County

line and Highway 51 from the Madison County to the Copiah County line should remain in the future where they are now located, and that the same should be so considered by the Highway Commission to be on a final location, the fact remains that the legislature has committed to the Highway Commission, and not to the courts, the province of determining whether or not the said links of highway are on such a location.

It is for the Highway Commission to determine in the exercise of its sound judgment and discretion whether the needs of the traveling public through the rapidly growing capital city may soon require the relocation of Highway 51 from the Madison County line to a point some distance south of Jackson toward the town of Terry and its conversion into a four or eight lane highway (via the Municipal Airport and through west Jackson so as to avoid the "bottleneck" at Fondren and other traffic difficulties); also whether or not the 7.7 miles of Highway 80 through Bolton and Edwards is on a final location.

In the case of Board of Sup'rs of Smith County v. Hawkins, 192 Miss. 330, 5 So. (2d) 684, 685, when the boards of supervisors possessed a jurisdiction over county roads and bridges such as that now exercised by the Highway Commision over certain designated state highways, the Court said that "the law confers upon the supervisors power and supervision over the county highways and bridges. The supervisors are in much better position than the courts to know the comparative needs of the roads and bridges and when they best serve the public." In the case at bar it is shown, according to the testimony of the officials of the Commission and the maps, surveys and plans already under consideration in regard to Highway 51 and the 7.7 miles of Highway 80 referred to as being between Clinton and the Hinds-Warren County line, that the same are not on final location.

Also, in the case of Wilkinson County v. State Highway Commission, 191 Miss. 750, 4 So. (2d) 298, 299, the Court cited the case of Trahan et al. v. State Highway Com-

mission et al., 169 Miss. 732, 151 So. 178, to the effect that "the highway commission was and is fully empowered to relocate the line of a state highway between the points designated by the legislature, and thereby to abandon the original line." Then the Court further stated "we will not further elaborate upon what was there said except that we now add that in the relocations by the commission in eliminating curves and shortening distances and in otherwise finding a better location, the new line may depart from the old as much as eight to twelve miles, as was done in the case now before us. So long as done for any good reason in the interest of through traffic, the authority in that respect is wholly at the discretion of the State Highway Commission."

In the Wilkinson County case, supra, the Highway Commission demanded, in writing, that the county release a graveled highway constructed at local expense from Woodville north to the Adams County line, a distance of eighteen miles, for use by the Commission as a part of State Highway 61. The county acquiesced in this demand. The link of road was under the supervision of the Commission as a part of the state highway for seventeen years, when it abandoned eleven miles thereof. It was held that the Commission had the right to abandon the same. And the fact that the road there involved was a graveled one does not render inapplicable in the case at bar the principle of law hereinbefore quoted. The decision would necessarily have been the same if the old paved highway from Jackson to Clinton had been there involved after having been used for thirteen years as a part of Highway 80 and after the Commission had constructed the overhead bridge thereon at the end of West Capitol Street. The fact that it had been used for many years as a part of a paved state highway was immaterial, unless and until the Commission should determine it to be on a final location.

The acquiescence of the legislature in the non-action of the Highway Commission in regard to appraising the

highways in question may be explained upon the theory that it has known through the years that the Commission was expending more of its own funds in Hinds and all other large counties where links of highway were built at local expense than in any of the other counties of the state; and that since the money for building said links at local expense would not in any event be refunded to the taxpayers, it would be better that current gasoline funds be expended by the Highway Commission under the advice of expert engineers than by local authorities.

By further prolonging this opinion other reasons could be given which, in my opinion, would lead to a reversal of the judgment herein, and there are other court decisions which would sustain the proposition that the writ of mandamus should not be issued in this case. The case has been well briefed on both sides, but, in my judgment, the reply brief on behalf of the Highway Commission fully answers the contentions of the appellee, and the same is so logical as to be unanswerable. But for the reasons hereinbefore stated I think that the judgment appealed from herein should be reversed and the proceeding dismissed.

**Sydney Smith, C. J.**, concurs in this dissenting opinion.

On Suggestion of Error.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

The Highway Commission renews its argument that the affirmed judgment of the trial court is an intrusion upon the discretion vested in the Commission. What the Commission seems to be urging, however, is that the discretion which it now desires to exercise shall be allowed to become a retroactive discretion, so as to undo something already done and done in pursuance of the discretion. So far as concerns a final location, within the meaning of the statute under consideration, the roads

have already been located, and have been so for years, the result as a final fact being one upon the ground to be seen by a thousand witnesses every hour of the day. The court is dealing with something already done, while the Commission continues to talk of something wished or proposed to be done.

What was done in this case is summarized in our former opinion as regards the facts and the controlling facts. which constitute a final location within the meaning of the statute under consideration, and we quote it here to point up and emphasize what, and what only, we have decided in this case so far as its central issue is concerned [23 So. 2d 893, 899] : "When the continuous state highway was being completed, and in so doing, connection was made with the north and south links in Hinds County, that link was a paved highway, paved with the same character of durable material that the Highway Commission was generally using in its permanent work, and of a width sufficient to furnish safe lanes for passage in each direction. It was laid out upon reasonably straight lines, upon suitable and safe grades and grading, and free from dangerous crossings, and was sufficient to carry the people of the state with convenience to or through principal points of business or social interests. We think practical men of sound judgment. would say that at the time of the connection that the link as it existed was suitable to be and become a link in a continuous state highway for a considerable time to come." This is a far different factual situation from that dealt with in Wilkinson County v. State Highway Commission, 191 Miss. 750, 4 So. (2d) 298, which the Commission now again urges in the argument. In that case there had been neither a final location nor facts which would at all befit a final location, such as we have above outlined.

It must be, as we think, that the Commission in its insistent attitude in this case is proceeding under the apprehension that by the holding of the trial court and our

affirmance, the Commission will be precluded from making any other or any new location, when once there has been a final location as meant under the statute here under consideration. We went to the trouble of elaboration in our original opinion in this case to indicate that nothing of the latter import was intended. We have had no such purpose as to intimate that the Commission may not now, in the exercise of the discretion conferred upon it, lay out new or supplemental routes, as it is said the Commission now contemplates in the situation here under consideration, in which connection we call attention to the further fact that we have never yet held, as seems to be assumed, that when there has been a final location, as has been in this case, the Commission if and when it makes a new or supplemental location may thereupon cast the present final location back upon the county, as was held in the Trahan (Trahan v. State Highway Commission, 169 Miss. 732, 151 So. 178) and Wilkinson County cases, which did not involve previous final locations at all. The two questions put in this paragraph are not now before us, have not heretofore been before us, and we make this response to the suggestion of error that the matter may be so understood.

The Commission again argues that it has no money on hand to pay for the appraisement, but because this is so far afield from the undisputed facts shown by its own audits in this record, the argument is finally that its only available funds are from the gasoline taxes and that these can be expended only as proved by Secton 10048, Code 1942, and that appraisements are not within the language of that section. The section does provide that the portion of that fund passed to the credit of the Highway Commission may be expended for construction and maintenance, and we held in State ex rel. Cowan v. State Highway Commission, 195 Miss. 657, 682, 13 So. (2d) 614, that these terms include reimbursement under Section 5004, Code 1930, and as appraisement is an essential incident to reimbursement, appraisement is in-

cluded. We have allowed the mandamus to issue because the Commission has on hand the money for the appraisement and which is at its command for that purpose; the order does not include payment of the appraised amount for the reason that the Commission does not have on hand or within prospect without legislative aid the sums needed to pay the appraisement along with similar demands of other counties. The money is due the counties for roads which have been finally located, as that term is meant in the act in question, but whether the debt as ascertained by the appraisement will be honored as are other debts, is one which will lie at the door of the legislature, and we are concerned only that it shall not be at that of the courts.

Suggestion of error overruled.

McGehee, J., and Smith, C. J., adhere to the views expressed in the opinions hereinbefore rendered by them and think that this suggestion of error should be sustained.